**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE: MOVEIT CUSTOMER DATA SECURITY BREACH LITIGATION | MDL No. 1:23-md-03083-ADB-PGL |
| This Document Relates To:<br><br>1:23-cv-13014-ADB<br>1:23-cv-13015-ADB<br>1:23-cv-13026-ADB<br>1:23-cv-13019-ADB<br>1:23-cv-13018-ADB<br>1:23-cv-13020-ADB<br>1:23-cv-12524-ADB<br>1:23-cv-13025-ADB<br>1:23-cv-12736-ADB<br>1:24-cv-10031-ADB<br>1:23-cv-13077-ADB | |

**DECLARATION OF GARY F. LYNCH IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF AMENDED CLASS ACTION SETTLEMENT**

1. I am an attorney licensed in Pennsylvania and New York and have been admitted to practice before the Supreme Court of the United States and numerous federal appellate and district courts. I have been appointed by this Court to serve as Co-Lead Counsel for MDL Plaintiffs. I have been active in all aspects of this Litigation. I submit this Declaration in support of Plaintiffs' Unopposed Motion for Final Approval of Amended Class Action Settlement Agreement (the "Declaration"). The information set forth in this Declaration is based upon my personal knowledge.

2. I am a founding member of the law firm of Lynch Carpenter, LLP ("Lynch Carpenter" or the "Firm") and have been engaged in the practice of law for over thirty years, with

the majority of my career spent representing plaintiffs in the litigation of complex civil cases and class actions. The primary focus of my practice is data breach and data privacy litigation.

3. I have spent the bulk of my professional time representing individual and institutional plaintiffs in class action and multi-district litigation throughout the country and am currently serving, or have served, as lead, co-lead counsel in numerous federal and state class actions and multidistrict proceedings, including, among others: *In re Wawa, Inc. Data Security Litig.*, No. 19-cv-6019 (E.D. Pa) (appointed co-lead of consolidated data breach on behalf of financial institution plaintiffs and reached a $37 million settlement for the financial institution class, as mediated by former Magistrate Judge Diane Welsh; preliminary approval granted); *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, No. 1:17-md-02800 (N.D. Ga.) (appointed co-lead MDL counsel on behalf of financial institution plaintiffs and reached a $7.75 million settlement for the financial institution class); *In re Home Depot Data Breach Litig.*, No. 1:14-md-2583 (N.D. Ga.) (same and 27 million settlement for the financial institution class); *First Choice Fed. Credit Union v. The Wendy's Co*., No. 2:16-cv-00506 (W.D. Pa.) ($50 million settlement for the financial institution class); *Dittman v. UPMC d/b/a The Univ. of Pittsburgh Med. Ctr.*, No. GD14-003285 (Pa. Ct. Com. Pl.) (lead counsel on behalf of plaintiffs after obtaining reversal in the Pennsylvania Supreme Court); *Veridian Credit Union v. Eddie Bauer LLC*, No. 2:17-cv-356 (W.D. Wash.) ($2.7 million settlement for the financial institution class).

4. In addition to serving as lead counsel in major data breach litigation, I have also served in leadership committee positions in many other data breach/privacy cases, including: *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 2522 (D. Minn.) (appointed to the Executive Committee managing the litigation on behalf of all plaintiffs (consumers, financial institution, and shareholders). The case was ultimately settled for $10 million (for consumers) and

$39 million (for financial institutions)); *In re Marriott Int'l Customer Data Security Breach Litig.*, MDL No. 2879 (D. Md.); *In re: Cmty. Health Sys., Inc.*, *Customer Sec. Data Breach Liti*g., MDL No. 2595, 15-cv-0222 (N.D. Ala.); *In re: Arby's Rest. Group, Inc. Data Sec. Litig*., No. 17-mi-55555 (N.D. Ga.); *Greater Chautauqua Fed. Credit Union et al v. Kmart Corp*., No. 15-cv-02228 (N.D. Ill.); *In re Vizio, Inc. Consumer Privacy Litig*., MDL No. 2693 (C.D. Cal.) (consumer privacy breach, steering committee; $17 million settlement).

5. I make this Declaration in support of final approval of the proposed Amended Class Action Settlement Agreement and Release ("Settlement" or "Agreement" or "Amended Settlement") reached between the Plaintiffs and Arietis Health LLC ("Defendant" or "Arietis Health") after extensive arm's-length negotiation and executed on November 26, 2024, a true and accurate copy of which is docketed at ECF No.1294-1.

6. I am submitting this declaration to put before the Court certain documents and facts supporting final approval of the Settlement and demonstrating that the requirements of Federal Rule of Civil Procedure 23 are satisfied for purposes of finally certifying the Settlement Class and that the proposed Settlement is fair, reasonable, and adequate.

7. In my view, the Settlement represents an excellent result that will provide significant benefits to the Settlement Class Members while removing the risk and delay associated with further litigation. And based upon my experience serving as lead counsel, and in other leadership positions, in class action litigation, it is my opinion that the proposed Settlement in this Litigation is fair, adequate, and reasonable, so as to satisfy the requirements for final approval pursuant to Fed. R. Civ. P. 23. This opinion is shared by Class Counsel,[1] and the Court-appointed

---

[1] Unless otherwise defined herein, all capitalized terms have the same definitions as those set forth in the proposed Class Action Settlement Agreement and Release, ECF No. 1294-1.

members of the Settlement Committee, Brian Gudmundson, Jonathan Jagher, and Norman Siegel, all of whom played a role in negotiating and finalizing the Settlement.

8. The Settlement Amount consisting of cash in the amount of $2.8 million, less Court-approved attorneys' fees and expenses, costs of settlement administration, and Service Awards for the Plaintiffs, shall be for the benefit of the Settlement Class Members.

9. I recommend the proposed Settlement is an excellent result in light of the factual and legal risks of continued litigation. In recommending the Settlement as fair, reasonable, and adequate, Class Counsel and the Settlement Committee have considered, among other things, the events underlying Plaintiffs' claims and the possible defenses to those claims, as well as the information gleaned by the extensive exchange of information conducted by the Parties in this case.

10. All of this information provided us with a thorough understanding of the strengths and weaknesses of Plaintiffs' claims and the risks associated with further litigation.

11. In short, Class Counsel and the Settlement Committee believe that this Settlement is fair and reasonable because it provides a substantial monetary recovery weighed against the risks of proceeding with litigation.

12. There have been no material changes in circumstances which impact Plaintiffs' assessment of the suitability of the proposed classes for certification since the Court granted preliminary approval.

**CLASS COUNSEL BELIEVE THAT THE PROPOSED SETTLEMENT SATISFIES THE APPLICABLE FACTORS CONSIDERED BY COURTS WITHIN THE FIRST CIRCUIT WHEN REVIEWING PROPOSED CLASS ACTION SETTLEMENTS**

13. Before agreeing to the proposed Settlement, Class Counsel and the Settlement Committee assessed the merits using various factors typically used by counsel in this type of case including the factors used by courts in the First Circuit to assess proposed class action settlements.

14. Class Counsel and the Settlement Committee believe that the proposed Settlement is fair, reasonable, and adequate and should be finally approved when the applicable factors are considered. Those factors include: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

15. The complexity, expense, and likely duration of the litigation, justify final approval of the Settlement.

16. There have been no objections to the settlement and only 34 requests to opt-out of the Settlement. Further, Plaintiffs support the proposed Settlement.

17. The stage of the proceedings and the amount of discovery completed justifies approval of the Settlement. Class Counsel and others engaged in extensive factual investigation regarding the claims asserted in the MDL. Further, the Parties conducted informal discovery and exchanged relevant information prior to and during the course of the settlement discussions. Finally, the Parties engaged in a mediation session before the Honorable Diane M. Welsh (Ret.).

18. The risks of establishing liability and damages also counsel in favor of approval of the Settlement. Defendant has vigorously contested liability throughout the course of this Action, would almost certainly have contested class certification, and would have likely moved for summary judgment. Thus, certification, liability, and damages would have remained highly contested issues had the settlement not been reached by the Parties.

19. The risks of maintaining the class action through the trial justifies approval of the Settlement as well. As noted above, Defendant likely would have contested certification of the Settlement Class and damages on a class-wide basis. The risks associated with maintaining a certified class therefore support Settlement.

20. The range of reasonableness of the settlement fund in light of the best possible recovery and all the attendant risks of litigation strongly favors approval of the Settlement. Here, the Settlement provides for each Settlement Class Member to receive real relief while taking into consideration Arietis Health's limited financial condition.

21. Specifically, Settlement Class Members were permitted to file a claim for one or more of the following:

a. Reimbursement of Out-Of-Pocket Losses. Settlement Class Members who submit an attested claim for reimbursement of Out-of-Pocket Losses may submit a claim up to $5,000.00 per individual for documented out-of-pocket losses. To receive reimbursement of extraordinary losses, the out-of-pocket loss must: (1) be an actual, documented, and unreimbursed monetary loss; (2) more likely than not caused by the MOVEit Security Incident; and (3) have occurred between May 31, 2023, and the close of the Claims Period;

i. The categories of reimbursable out-of-pocket losses include: (1) Unreimbursed fraud suffered; (2) Long distance telephone charges; (3) Cell phone minutes (if charged by the minute); (4) Internet usage charges (if charged by the minute or incurred solely as a result of the data incident; (5) Credit monitoring or fraud resolution services; (6) Costs of credit reports; (7) Bank or other financial institution charges incurred as a result of the data incident; or (8) Other losses directly and reasonably incurred as a result of the data incident.

b. Reimbursement for Time Spent Claims. Settlement Class Members may submit a claim for lost time dealing with the data incident at $25.00 per hour up to a maximum of four hours upon attestation and a narrative description that time was spent dealing with the consequences of the data incident; and

c. Medical Data and Credit Monitoring and Identity Theft Protection Services. Settlement Class Members may also elect to enroll in four (4) years of medical and credit monitoring services that will include, among other services: (a) healthcare insurance plan ID monitoring that tracks and alerts when a plan ID is exposed on the dark web; (b) Medical Record Number (MRN) monitoring that alerts when a medical record number is detected on the dark web; (c) National Provider Identifier (NPI) monitoring to track and alert when registered licensing credentials are found on the dark web; (d) Medicare Beneficiary Identifier (MBI) that alerts when MBI has been disclosed on the dark web; (e) International Classification of Diseases (ICD) monitoring, which notifies when an ICD Code is detected on the dark web;

(f) health savings account monitoring, which monitors registered health savings accounts for unusual or unauthorized transactions; and (g) $1 million of medical identity theft insurance with no deductible. Settlement Class Members who elect to enroll in medical monitoring services will also receive four years of one bureau credit monitoring.

22. The out-of-pocket losses are intended to provide relief for costs commonly incurred due to data breaches, including unreimbursed fraud, telephone or cell phone charges, internet usage charges, credit monitoring, or costs of credit reports bank of financial institution charges. Reimbursement for lost time, similarly, is intended to provide relief for time incurred responding to Arietis Health's data breach, including, for example, monitoring accounts, even if those actions did not cause an out-of-pocket loss. Finally, the medical, credit, and identity theft monitoring prevents harm from the future misuse of the impacted data, a risk all Settlement Class members face due to having their personal and medical information stolen.

23. Class Counsel and the Settlement Committee are aware of no evidence of fraud or collusion behind the Settlement. Instead, this Settlement was the product of extensive negotiations between experienced counsel under the supervision of respected mediator Judge Welsh. The final parameters of the proposed Settlement were negotiated amongst counsel at arm's-length following this mediation, and those discussions took several months.

24. Class Counsel and the Settlement Committee have developed a comprehensive understanding of the merits of the case through our work on the Action. In our view, when we agreed to the proposed Settlement, we had sufficient information about the strengths and weaknesses of the claims and defenses, as well as Defendant's financial condition, to make a reasoned judgment about the desirability of settling the case according to the terms proposed.

25. In Class Counsel's and the Settlement Committee's view, the stage of litigation and amount of discovery weigh in favor of final approval of the Settlement.

**CONCLUSION**

26. Plaintiffs, Class Counsel, and the Settlement Committee respectfully submit that the Settlement is an excellent result for the Settlement Class in this case. Class Counsel and the Settlement Committee recommend that the Settlement is fair, reasonable, and adequate, and requests that this Court grant final approval to the Settlement Agreement and the proposed Settlement Benefits Plan.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 4, 2025
in Pittsburgh, Pennsylvania

Gary F. Lynch

**CERTIFICATE OF SERVICE**

I hereby certify that, on this date, the foregoing document was filed electronically via the Court's CM/ECF system, which will send notice of the filing to all counsel of record.

Dated: March 4, 2025

*/s/ Kristen A. Johnson*
Kristen A. Johnson (BBO# 667261)